IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ILUSTRATA SERVICOS DESIGN, LTDA., <br><br> Plaintiff, <br><br> v. <br><br> PDD HOLDINGS, INC., a Cayman Islands corporation, WHALECO, INC., a Delaware corporation, and DOES 1-10, <br><br> Defendants. | Case No. 23-cv-04824 <br> Honorable LaShonda A. Hunt |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PDD HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 1 |
| | A. Ilustrata's Works | 1 |
| | B. PDD's Control of WhaleCo | 3 |
| III. | LEGAL STANDARD | 3 |
| | A. Rule 12(b)(2) | 3 |
| | B. Rule 12(b)(6) | 4 |
| IV. | ARGUMENT | 5 |
| | A. This Court has Personal Jurisdiction over Defendant PDD | 5 |
| |    i. This Court has Specific Personal Jurisdiction Over Defendant PDD | 6 |
| |       1. *PDD Purposefully Availed Itself of Conducting Business in Illinois* | 6 |
| |       2. *Ilustrata's Injury Arises Out of PDD's Conduct in Illinois* | 9 |
| |       3. *Personal Jurisdiction Over PDD Comports with Fair Play and Justice* | 10 |
| |    ii. This Court has Jurisdiction Over Defendant PDD Under Rule 4(k)(2) | 10 |
| |    iii. Alternatively, Ilustrata Should Be Permitted to Take Jurisdictional Discovery | 13 |
| V. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Alam v. Miller Brewing Co.*,
    709 F.3d 662 (7th Cir. 2013)...................................................................................................4

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................................4

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...............................................................................................................5,6

*City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*,
    830 F. Supp. 2d 550 (S.D. Ill. 2011) .........................................................................................9

*Curry v. Revolution Lab'ys, LLC*,
    949 F.3d 385 (7th Cir. 2020) .................................................................................................3,9

*Douglas v. Lofton*,
    No. 12 C 8592, 2013 WL 5940749, at *2–3 (N.D. Ill. Nov. 6, 2013) ......................................4

*Felland v. Clifton*,
    682 F.3d 665, 678................................................................................................................10,13

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ..............................................................................................................6

*Gruca v. Alpha Therapeutic Corp.*,
    19 F. Supp. 2d 862 (N.D. Ill. 1998) ..........................................................................................7

*Indag GmbH & Co. v. IMA S.P.A*,
    150 F. Supp. 3d 946 (N.D. Ill. 2015) ......................................................................................10

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ..................................................................................................................5

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
    256 F.3d 548 (7th Cir. 2001)...................................................................................................11

*JT's Frames, Inc. v. Casares*,
    No. 16-cv-2504, 2018 U.S. Dist. LEXIS 23565, at *17 (N.D. Ill. Feb. 12, 2018) ...........14

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984).................................................................................................................5

*Kosar v. Columbia Sussex Mgmt.,LLC*,
    2021 WL 4499494, *2 (N.D. Ill. June 1, 2021) ......................................................................4

*Kulko v. California Superior Court*,
    436 U.S. 84 (1978)...................................................................................................................6

*LaSalle Nat. Bank v. Vitro, Sociedad Anonima*,
    85 F. Supp. 2d 857(N.D. Ill. 2000) ..........................................................................................6

*McGee v. Int'l Life Ins. Co.,*

    355 U.S. 220, 222, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957) ........................................6

*Monster Cable Prod., Inc. v. Euroflex S.R.L.*,
    642 F. Supp. 2d 1001(N.D. Cal. 2009) ...........................................................................12

*Purdue Rsch. Found. v. Sanofi Synthelabo, S.A.*,
    338 F.3d 773(7th Cir. 2003) ..........................................................................................3,4

*Roadget Business PTE. Ltd. v. WhaleCo, Inc.*,
    Case No. 22-cv-7119 .......................................................................................................11

*Rogers v. City of Hobart*,
    996 F.3d 812(7th Cir. 2020) .............................................................................................6

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
    563 F.3d 1285 (Fed. Cir. 2009) ......................................................................................11

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ............................................................................................4

*Ticketreserve, Inc. v. Viagogo*, Inc.,
    656 F. Supp. 2d 775 (N.D. Ill. 2009) .............................................................................14

*Torrent Pharmaceuticals Ltd. V. Daiichi Sankyo, Inc.*,
    196 F. Supp. 3d 871 (N.D. Ill. 2016) .............................................................................10

*Touchcom, Inc. v. Bereskin & Parr*,
    574 F.3d 1403 (Fed. Cir. 2009) .................................................................................10,12

*uBID, Inc. v. GoDaddy Grp., Inc.*,
    623 F.3d 421 (7th Cir. 2010) ............................................................................................4

*United Airlines, Inc. v. Zaman,*
    152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015) ...................................................................3

*United States v. Aquatherm GmbH,*
    609 F. Supp. 3d 1163 (D. Or. 2022) ...............................................................................13

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000) .............................................................................................13

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) .........................................................................................................5

**Rule & Statute**

Rule 4(k)(2)..............................................................................................................1,5,10,11,13

Rule 12(b)(2).........................................................................................................................3,4

Rule 12(b)(6)............................................................................................................................4

Plaintiff Ilustrata Servicos Design, LTDA. ("Plaintiff" or "Ilustrata") hereby opposes the Motion to Dismiss ("Motion," ECF No. 26) of Defendant PDD Holdings, Inc. ("PDD") and Defendant WhaleCo, Inc. ("WhaleCo") (collectively "Defendants").

## I. INTRODUCTION

Plaintiff Ilustrata, a working contemporary artist, had its intellectual property rights stolen by Defendants. Defendants sold products bearing Ilustrata's artwork on their website and mobile application, known as "Temu," without Ilustrata's permission. Defendants have profited from their unauthorized sale of such products to Ilustrata's detriment.

Hoping to evade responsibility for unlawfully appropriating Ilustrata's intellectual property, PDD argues that it is not subject to this Court's personal jurisdiction. However, PDD is subject to personal jurisdiction in this Court because it controls WhaleCo, which indisputably engages in substantial business in Illinois, out of which conduct, Plaintiff's claims arose. In the alternative, PDD is subject to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) because it is not subject to personal jurisdiction in any state and has sufficient contacts with the United States as a whole. At a minimum, the parties' jurisdictional claims conflict, and Ilustrata should be afforded jurisdictional discovery to fortify this Court's personal jurisdiction over PDD.

PDD also argues, along with WhaleCo, that Ilustrata's claims for statutory damages and attorneys' fees should be dismissed. However, Ilustrata's claims are sufficiently pled, and dismissing them without the benefit of discovery would be premature. Thus, the Court should deny the Motion in its entirety.

## II. FACTUAL BACKGROUND

### A. Ilustrata's Works

Ilustrata is a company founded by a contemporary artist who is the author of the original

1

work entitled "The Broccozilla" (the "Work"). Compl. ¶ 3. On September 9, 2021, Ilustrata's Work was registered with the United States Copyright Office with Registration Number VA 2-270-596. *Id.* ¶ 4. Ilustrata's has collaborated with brands across the country to create illustrations for products including t-shirts, prints, packages, advertisements, and more. *Id.* ¶ 21. Further, Ilustrata has licensed certain of its works, including the Work, to Shein, a well-known apparel brand, in connection with Shein's SHEIN X incubator program for independent artists and designers. *Id.* ¶ 23.

Defendants, through Temu, offer for sale a variety of products, including apparel. *Id.* ¶ 25. Through Temu, Defendants have, without Ilustrata's permission or credit to Ilustrata, sold and profited from products with graphics identical to the Work (the "Infringing Products"), an example of which is depicted below:



*Id.* ¶¶ 5, 31. On or about March 29, 2023, a Digital Millennium Copyright Act ("DMCA") takedown notice regarding the Work and the Infringing Products was sent pursuant to 17 U.S.C. § 512(c) to the registered DMCA agent for Defendants. *Id.* ¶ 37. While Temu's website indicates that the above-depicted Infringing Product has been "discontinued," Defendants never responded to the takedown notice to confirm that it would cease selling the Infringing Products, nor did it compensate Ilustrata for the unlawful use of her Work. *Id.,* ¶ 38. Accordingly, on July 24, 2023, Ilustrata filed this action.

### B. PDD's Control of WhaleCo

PDD is a Cayman Islands corporation, with a principal place of business in Dublin, Ireland. Compl. ¶ 10. PDD is the owner and ultimate operator of Temu, through which Defendants offer goods and services to consumers in Illinois (and throughout the United States). *Id.* ¶¶ 11, 52. Accordingly, Defendants (i) purposely direct their business activities toward Illinois residents, through Temu, as well as through social media; (ii) derive substantial revenue from Illinois; (iii) conduct continuous and systematic business within Illinois directed at residents of this District, which business played an integral part in the infringement of Ilustrata's rights; and (iv) committed acts that have wrongfully caused Ilustrata harm in Illinois. *Id.* ¶ 19.

WhaleCo is and holds itself out to consumers as an agent of PDD in the United States and Illinois when providing services through Temu, with WhaleCo having the actual and apparent authority to act on behalf of PDD. *Id.* ¶ 13. PDD, though, retains both ultimate control of Temu's operations and the rights to benefits derived from Temu, including those obtained from the sale of the Infringing Products. *Id.* ¶ 55.

### III. LEGAL STANDARD

#### A. Rule 12(b)(2)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). A plaintiff need not "alleg[e] personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Rsch. Found. v. Sanofi Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). The

weight of that burden depends on whether the court rules on the motion with or without "the benefit of an evidentiary hearing." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 424 (7th Cir. 2010). If the Court rules without such a hearing, the plaintiff "bears only the burden of making a prima facie case for personal jurisdiction." *Id.*

A court evaluating a Rule 12(b)(2) motion must accept the truth of the complaint's well-pleaded factual allegations, draw all reasonable inferences in the plaintiff's favor, and resolve any factual disputes in the plaintiff's favor. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *see also Purdue*, 338 F.3d at 782–83 (citations omitted) (while defendants may assert "affidavits or other evidence in opposition to the exercise of jurisdiction," plaintiff may offer "affirmative evidence supporting the exercise of jurisdiction"). If there is ambiguity or some facts are unclear, the Court may order jurisdictional discovery before resolving the issue of personal jurisdiction. *See Kosar v. Columbia Sussex Mgmt., LLC,* 2021 WL 4499494, *2 (N.D. Ill. 2021).

**B.     Rule 12(b)(6)**

"A Rule 12(b)(6) motion challenges the sufficiency of the complaint." *Douglas v. Lofton*, No. 12 C 8592, 2013 WL 5940749, at *2–3 (N.D. Ill. Nov. 6, 2013). "Under the federal notice pleading standards, a plaintiff's 'factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, (2007)). "Put differently, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotations omitted). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Id.* (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).

4

IV.     ARGUMENT

    A.     **This Court Has Personal Jurisdiction over PDD.**

The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). But the Due Process Clause may not "readily be wielded as a territorial shield to avoid obligations that have been voluntarily assumed." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 (1985). A state has an interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984). Thus, the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In considering jurisdiction, the Court may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292. These considerations may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Keeton*, 465 U.S. at 780.

Here, personal jurisdiction over PDD exists in two distinct ways. First, PDD is subject to specific personal jurisdiction in Illinois. Second, PDD is subject to personal jurisdiction based on Federal Rule of Civil Procedure 4(k)(2).

### i. This Court Has Specific Personal Jurisdiction over PDD.

Courts may exercise either general jurisdiction or specific jurisdiction over defendants.[1] Specific jurisdiction "covers defendants less intimately connected with a State [than general jurisdiction]." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). A court can assert specific jurisdiction over an out-of-state defendant when that "defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal quotation marks omitted); *see also McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (jurisdiction is proper where contacts proximately result from actions by the defendant himself that create a "substantial connection" with forum State). The rationale for this is clear—when individuals purposefully derive benefit from their interstate activities, it would be "unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities." *Kulko v. California Superior Court*, 436 U.S. 84, 96 (1978).

To establish specific personal jurisdiction over a defendant, the plaintiff must show: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) [the] exercise of personal jurisdiction . . . comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2020) (citation omitted). Here, all three prongs have been met.

#### 1. PDD Purposefully Availed Itself of Conducting Business in Illinois.

PDD has purposely availed itself of the privilege of conducting business in Illinois through its control of WhaleCo, which conducts substantial business in Illinois using Temu. *See, e.g.*,

---

[1] Plaintiff does not assert that the Court has general jurisdiction over PDD.

*LaSalle Nat. Bank v. Vitro, Sociedad Anonima*, 85 F. Supp. 2d 857, 864 (N.D. Ill. 2000) (holding that if the parent sufficiently controls the subsidiary, then courts will impute the acts of the subsidiary to the parent). In determining if a parent company is doing business through its subsidiary, the Court should consider: (1) whether the parent arranges financing for and capitalization of the subsidiary; (2) whether separate books, tax returns and financial statements are kept; (3) whether officers or directors are the same; (4) whether the parent holds its subsidiary out as an agent; (5) the method of payment made to the parent by the subsidiary; and (6) how much control is exerted by the parent over the daily affairs of its subsidiary. *See Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 870 (N.D. Ill. 1998).

Here, Plaintiff alleges—and PDD does not dispute—that (1) WhaleCo conducts substantial business in Illinois through Temu, and (2) PDD controls and is the alter ego of WhaleCo. Compl. ¶¶ 11, 13, 19, 52-76. Rather, PDD merely reiterates that WhaleCo is a PDD subsidiary, and attempts to disclaim any responsibility for Temu's operations. *See* Declaration of Xiyao Di ¶ 11, ECF No. 28. These contentions are insufficient to overcome Plaintiff's well-pled allegations of WhaleCo's conduct in Illinois and PDD's control over WhaleCo.

Moreover, PDD's public statements about its operations make clear that, contrary to its assertions in this lawsuit, it does control WhaleCo and Temu. For example, in its 2022 Annual Report to the SEC, PDD referred to the "Temu platform" as "*our* platform" and Temu as "*our* brand"; defined "Temu" and "Temu platform" as "*our* Temu mobile app and website and a variety … services that *we* provide to buyers and merchants via the Temu mobile app and website"; and stated that "*[w]e* launched a new initiative, Temu," "*[w]e* began our business *operations* in multiple jurisdictions through the launch of the Temu platform," and "*[w]e* are still in the early stages of *operating* the Temu platform." *See* Ex. A, Declaration of Elizabeth Austermuehle

7

("Austermuehle Decl."), Ex. 1 at 1, 3, 17, 43, 44 (emphases added).

Similarly, as of January 2023, PDD stated on its U.S. website, www.pddholdings.com, that it "owns and operates a portfolio of businesses, including Temu, an e-commerce marketplace for North American consumers . . . [and] has built a network of sourcing, logistics, and fulfillment capabilities and shares these capabilities with its various businesses." *Id.*, Ex. 4 at 1.[2] Likewise, as of January 2023, Temu's website (a registered domain name of PDD), stated that PDD founded Temu and that Temu leverages PDD's "vast and deep network of merchants, logistic partners, and its established ecosystem . . . to offer a wide range of affordable quality products to [Temu's] customers." *Id.*, Ex. 3 at 1; *see also id.*, Ex. 1 at 66 (www.temu.com is a registered domain name of PDD); *see also id.,* Ex. 5 at 3 ("Temu is able to utilize the sourcing, logistics, and order processing capabilities of PDD Holdings and tap into the roster of manufacturers to curate a wide range of global goods"); *see also id.,* Ex. 6 at 4 ("By leveraging the sourcing, fulfillment, and shipping capabilities of PDD Holdings, Temu is bringing the savings to its consumers"). At this time, Temu's website also stated that PDD "[h]andled 61 billion orders from 11+ million suppliers in 2021" and generated "US$14.7 billion revenue, US$2.2 billion net income and US$4.6 billion net cash . . . from operating activities in 2021[.]" *Id.*, Ex. 3 at 1.

PDD does not dispute that it also operates an e-commerce platform in China under the "Pinduoduo" brand. *Id.*, Ex. 4 at 1. PDD has held out Pinduoduo and Temu as "sister companies that both leverage on [PDD]'s global network of sourcing, logistics, and fulfillment capabilities." *Id.*, Ex. 3 at 1-2. Indeed, the platform and services provided to Chinese consumers through Pinduoduo are identical to the platform and services offered to United States consumers through

---

[2] Tellingly, PDD omits all references to WhaleCo in its report. *See* Ex. A, Ex. 1. These references to Temu on PDD's website have since been removed, presumably to conceal Temu's ties with PDD. *Id.,* Ex. 7 at 3 ("Today, Temu's 'About Us' section doesn't mention PDD or Pinduoduo").

8

Temu. *Id.*, Ex. 3 at 3. Moreover, the PDD utilizes and shares similar technology between both platforms. *Id.,* Ex. 2 at 8 ("Temu has also launched the Referral Bonus mode in North America, moving PDD's social fission marketing overseas."). Thus, as these documents make clear, through its control of Pinduoduo, PDD also controls and directs Temu.

The above evidence makes a prima facie showing that PDD controls and is an alter ego of WhaleCo, and thus that PDD is purposefully availing itself of conducting business in Illinois. *See City of Greenville, Ill. v. Syngenta Crop Prot., Inc*., 830 F. Supp. 2d 550, 563 (S.D. Ill. 2011) (personal jurisdiction over parent company was proper when a group of affiliated companies functioned more like a "monolithic corporation" controlled by parent as opposed to a group of independent though related companies). PDD and WhaleCo are part of the same monolithic corporation, both operating to operate Temu in Illinois and throughout the United States.

2. *Ilustrata's Injury Arises out of PDD's Conduct in Illinois.*

PDD's substantial business in Illinois through WhaleCo and Temu gave rise to Plaintiff's injury. PDD sold the Infringing Products on Temu without Ilustrata's permission and without crediting or compensating Ilustrata. Compl. ¶¶ 31-35. PDD is also responsible for the creation, operation, display, and advertisement of the Temu webpages selling the Infringing Products. *Id.* Further, PDD controls the shipping and fulfillment of the Infringing Products to consumers, including consumers based in Illinois, thereby directly profiting from the infringement. *Id.* ¶ 55-57. Moreover, PDD could reasonably foresee the sale of the Infringing Products in Illinois. *Curry v. Revolution Labs*., 949 F.3d 385, 399 (7th Cir. 2020) (holding that "[t]here is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum"). Thus, Ilustrata has been harmed by PDD's conduct in Illinois.

9

### 3. Personal Jurisdiction over PDD Comports with Fair Play and Justice.

This Court's exercise of personal jurisdiction over PDD comports with the traditional notions of fair play and justice. PDD cannot operate, market, sell, and profit from unlawful activities through Temu in Illinois and then attempt to disclaim association with Temu and Illinois to escape responsibility for those activities. And PDD has not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Felland v. Clifton*, 682 F.3d 665, 678. Thus, this Court's exercise of specific jurisdiction over PDD is proper.

### ii. This Court Has Jurisdiction Over PDD Under Rule 4(k)(2).

Alternatively, this Court may exercise personal jurisdiction over PDD pursuant to Rule 4(k)(2). "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). For the second requirement, the court considers the entire United States as the forum and asks whether the defendant had sufficient minimum contacts with the country as a whole. *See Torrent Pharmaceuticals Ltd. V. Daiichi Sankyo, Inc.*, 196 F. Supp. 3d 871, 879 (N.D. Ill. 20 16); *see also Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 960 (N.D. Ill. 2015) (The court "does not look to where the plaintiff has alleged that a defendant is subject to jurisdiction, rather, if 'the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)'") (quoting *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009)).

Here, the Court has personal jurisdiction over PDD pursuant to Rule 4(k)(2). To begin, it is indisputable that this action arises under the Copyright Act, which is federal law. Compl. ¶ 18.

10

In addition, PDD has not asserted that it is subject to jurisdiction in any state's court of general jurisdiction. Instead, it merely asserts that it is not subject to personal jurisdiction in Illinois.[3] *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001), as amended (July 2, 2001) ("If . . . the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)."). As PDD has not argued that it is subject to personal jurisdiction in another state, the Court may apply Rule 4(k)(2).

Further, exercising jurisdiction is consistent with the United States Constitution and laws. As when analyzing whether a specific state has personal jurisdiction, a court's analysis under Rule 4(k)(2) may consider specific jurisdiction. *See*, *e.g.*, *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) (applying the same three-prong test for specific personal jurisdiction in a particular state to determine specific personal jurisdiction under Rule 4(k)(2)).

An examination of PDD's contacts with the entire United States reveals that it is subject to specific personal jurisdiction under Rule 4(k)(2). First, as discussed above in Section IV.A.i.1, PDD controls and operates WhaleCo and Temu, and thus conducts substantial business throughout the United States. Not only is Temu a U.S.-based platform, but it primarily operates in and targets the U.S. market, through sales and advertising. *See* Austermuehle Decl., Ex. 1 at 82 ("[T]he Temu platform operates primarily in the United States . . ."); *id.*, Ex. 3 at 1 ("Temu [is] an e-commerce

---

[3] Notably, however, PDD has conceded to personal jurisdiction in Illinois in another case pending before the Northern District of Illinois. *See Roadget Business PTE. Ltd. v. WhaleCo, Inc.*, Case No. 22-cv-7119 (ECF No. 50, PDD Holdings, Inc.'s answer to amended complaint). While this does not operate as a waiver of jurisdiction in this case, it does indicate that PDD has not argued Illinois is an improper forum in the past or that there is some other state that would be a more appropriate forum.

marketplace for North American consumers . . ."); *id.*, 3 at 1 ("Temu was founded in Boston . . . by . . . [PDD] . . ."); *id.*, Ex. 2 at 15 ("Temu's main target group is low-income American consumers who are struggling with inflation.. . ."); *id.*, Ex. 9 at 2 ("Temu . . . [is] the most downloaded app on Apple and Google Play stores in the United States. The platform's gross merchandise value – total sales before expenses – grew from $3 million in September [2022] to $192 million in January [2023] . . ."); *id.*, Ex. 10 at 2 ("[L]ooking to capitalize from an appearance on America's biggest stage[,] Temu, a Boston-based online retailer . . . made its Super Bowl debut on Sunday.'"). And it is this sales and advertising activity—in connection with the Infringing Products—that gave rise to Plaintiff's injury. Compl. ¶¶ 31-35.

In addition, PDD is seeking to register multiple trademarks with the United States Patent and Trademark Office ("USPTO"). *See* Austermuehle Decl., Exs. 11 & 12 (including Serial No. 97754327 for PDD and Serial No. 97754332 for PDD HOLDINGS, both of which seek trademark protection for goods and services including business management; business administration services; advertising services, and business consulting services, among other things).[4] "It stands to reason that one who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States." *Touchcom*, 574 F.3d at 1416; *see also Monster Cable Prod., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009) (holding that defendant's application to the USPTO to gain trademark protection in the United States constitutes a substantial contact, because defendant "would be able to sue for protection against allegedly infringing marks based on its trademark registration. . . . It is reasonable and does not offend traditional notions of fair play and substantial justice . . . to require [defendant] to submit

---

[4] In its trademark applications, PDD seeks trademark protection, presumably for business that it conducts in the United States, including business management, business administration, advertising services, and business consulting services. Austermuehle Decl. Exs. 11 & 12.

to the burden of litigation" (quotation omitted)); *United States v. Aquatherm GmbH*, 609 F. Supp. 3d 1163, 1171–72 (D. Or. 2022) (holding that where a defendant owns a U.S. federal trademark, it is "likely [] enough to support a finding that the third requirement under Rule 4(k)(2) is satisfied" even in a case not related to trademark infringement).[5]

Further, PDD is a publicly traded company which offers stock on NASDAQ to United States citizens. *See id.*, Ex. 1 at 1; *see also id.,* Ex. 8. PDD cannot avail itself of the benefit of conducting business in the United States and take advantage of the United States capital markets, but then argue that no court in the United States has jurisdiction over it. *See, e.g.*, *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000) (holding that a foreign defendant listed on a United States stock exchange was subject to personal jurisdiction, and noting that while listing on a stock exchange alone is insufficient to confer personal jurisdiction, it "doubtless [] of some importance in connection with other facts." (quotations omitted)). PDD's listing on NASDAQ and participation in the United States capital markets are significant contacts with the United States and relate to Plaintiff's claim that PDD profits from unlawfully selling the Infringing Products.

Finally, the assertion of personal jurisdiction over PDD under Rule 4(k)(2) comports with fair play and justice. PDD should be held accountable in the United States for its unlawful activities here through Temu, and PDD offers no reason why jurisdiction over it would be unreasonable. *Felland*, 682 F.3d at 678. Thus, the Court may assert jurisdiction over PDD under Rule 4(k)(2).

### iii. Alternatively, Ilustrata Should Be Permitted to Take Jurisdictional Discovery.

The Court may exercise personal jurisdiction over PDD for the reasons explained in

---

[5] The same company seeking to register the PDD and PDD HOLDINGS marks also claims to own and seeks to register TEMU and WHALECO as trademarks. See USPTO, Serial Nos. 97736428 and 97440940.

Sections IV.A.i and IV.A.ii, *supra*. However, should the Court determine that additional evidence on personal jurisdiction is needed, it should allow for jurisdictional discovery. "Generally, courts grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Ticketreserve, Inc. v. Viagogo*, Inc., 656 F. Supp. 2d 775, 782-83 (N.D. Ill. 2009); *see also JT's Frames, Inc. v. Casares*, No. 16-cv-2504, 2018 WL 835225, at *5, *6 (N.D. Ill. Feb. 12, 2018) (allowing plaintiff to take jurisdictional discovery where defendants submitted affidavit that contradicted jurisdictional allegations of plaintiff's complaint).

Here, to the extent the Court finds that the jurisdictional record is unclear, Ilustrata should be allowed to conduct discovery regarding PDD's contacts with Illinois and the United States, PDD's control over WhaleCo, PDD's involvement with Temu, and PDD's role in the sale of the Infringing Products and resulting profits. *See Ticketreserve, Inc.*, 656 F. Supp. 2d at 782; *JT's Frames, Inc.*, 2018 WL 835225, at *17. Granting Ilustrata this opportunity is appropriate, as it would allow it to test PDD's jurisdictional contentions and establish that, consistent with Ilustrata's allegations and evidence, this Court has personal jurisdiction over PDD.

V. **CONCLUSION**

For the reasons set forth above, the Court should deny the Motion. If the Court is inclined to dismiss any aspect of the Complaint, it should permit Ilustrata an opportunity to replead.

Dated: October 24, 2023 	Respectfully Submitted,

*/s/ Elizabeth Austermuehle*
Elizabeth Austermuehle
Vivek Jayaram
Palak V. Patel
JAYARAM LAW
54 W. 21st Street, Suite 801
New York, NY 10010
Telephone: (312) 212-8676
vivek@jayaramlaw.com
liz@jayaramlaw.com
palak@jayaramlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2023, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which provides service to all counsel of record.

　/s/   *Elizabeth Austermuehle*
Elizabeth Austermuehle

15